```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                  :
SANDRA GLAVES-MORGAN,                                             :
                                                                  :
                        Plaintiff,                                :
                                                                  :       11 CV 1248 (HB)
            - against -                                           :
                                                                  :       OPINION & ORDER
THE CITY OF NEW YORK, ROBERT DOAR,                                :
THOMAS DEPIPPO, and JOHN and JANE DOE,                            :
                                                                  :
                        Defendants.                               :
                                                                  :
------------------------------------------------------------------x
```

**Hon. Harold Baer, Jr., District Judge:**

      Plaintiff, an employee of the New York City Human Resources Administration ("HRA"), brings this action pursuant to 42 U.S.C. § 1981,[1] the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, the New York City Human Rights Law, N.Y. City Admin. Code § 8-101 *et seq.*, and the New York State Civil Service Law, N.Y. Civ. Serv. Law §§ 75-b, 80 (McKinney). Plaintiff alleges that Defendants discriminated against her on the basis of her sex and race, retaliated against her for her complaints of discrimination, and unlawfully demoted her. Before the Court is a motion for summary judgment filed by Defendants on the grounds that (1) Plaintiff has failed to state a *Monell* claim against the City, (2) Defendant DePippo was not personally involved in the alleged discriminatory or retaliatory behavior and must be dismissed, (3) Plaintiff has failed to establish a *prima facie* case of race discrimination or retaliation, (4) the individual Defendants are entitled to qualified immunity, (5) certain of Plaintiff's claims are time-barred, (6) Plaintiff's state law claims are procedurally barred, and (7) the Court should decline to exercise supplemental jurisdiction over Plaintiff's pendant claims. Plaintiff has filed a motion for sanctions, wherein she accuses Defendants of obstructive discovery practices and asks the Court to strike portions of its Rule 56.1 Statement, as well as for other relief. For the

---

[1] Plaintiff relies on the private right of action under § 1983. *See Whaley v. City Univ. of New York*, 555 F. Supp. 2d 381, 400–01 (S.D.N.Y. 2008).

1

following reasons, the motion for summary judgment is granted in part and denied in part, and the motion for sanctions is denied.

## I.   BACKGROUND[2]

Plaintiff began her employment with HRA in 1995 when she was hired as Deputy General Counsel in the Contracts, Business, and Commercial Law division. In 2002, she was promoted to Agency Chief Contracting Officer ("ACCO") and Executive Deputy Commissioner for HRA's Office of Contracts. As ACCO, Plaintiff was the principal contracting officer and advisor to the HRA Commissioner on all matters relating to procurement and contracts for HRA. In this role and with permission from then-Commissioner Verna Eggleston, Plaintiff reorganized the ACCO's office to include the Office of Purchasing and Materials Management ("OPMM")—formerly under the First Deputy Commissioner—because the ACCO was responsible for advising OPMM, but OPMM was not reporting directly to the ACCO.

Plaintiff alleges that upon Robert Doar's appointment as Commissioner, Doar and Thomas DePippo—Doar's First Deputy Commissioner—discriminated against her based on her race, color, and gender. Amongst the adverse actions taken against her were that OPMM was removed from her oversight, her responsibilities as ACCO were reassigned to persons outside the protected classes, she was ultimately removed as ACCO, and she was demoted and received a pay cut. All of this occurred, she alleges, under circumstances that raise inferences of discrimination, including hurtful and offensive statements made by Defendants, favorable treatment given to non-minority and non-female employees, and retaliation for her complaints of discriminatory treatment. Plaintiff's state and city claims are substantially broader than her federal claims, which are concern only race discrimination and are used here to retain jurisdiction.

## II.   SANCTIONS

Plaintiff asks the Court to impose sanctions on Defendants, including prohibiting certain defenses and the introduction of certain evidence at trial and striking portions of Defendants' Rule 56.1 Statement. Plaintiff says Defendants willfully delayed the production of witnesses and

---

[2] Unless otherwise indicated, facts are drawn from Plaintiff's Rule 56.1 Statement in Opposition to the Motion of Defendants for Summary Judgment.

other evidence and relied on documentary evidence in their motion for summary judgment that was delivered only after Plaintiff noted the unproduced evidence. Defendants say they complied with discovery requests in good faith and that Plaintiff never filed a motion to compel.

Despite considerable effort by Plaintiff to show me which evidence Defendants have yet to produce, I am unable to determine that there are documents that Defendants are actually withholding. Much of the discovery occurred very late in this case, indeed, discovery seemed to continue well into the briefing of this motion. The parties were unable to agree on a number of depositions, and depositions that had been scheduled were canceled, only to be rescheduled later. This put considerable pressure on the parties. And while this may have resulted in Plaintiff having seen certain evidence only for the first time when opposing this motion, I cannot find such examples that have any bearing on the resolution of the issues discussed below. I am also unable to determine that the delayed depositions were a result of willful or strategic decisions by Defendants. Plaintiff is clearly dissatisfied with what she sees as Defendants' unsatisfactory answers to interrogatories submitted after the later depositions were taken. To the extent that Defendants do identify documents that would more adequately answer certain of Plaintiff's requests, the Court expects that Defendants will produce those documents. Plaintiff, however, was advised by the Court on December 13, 2011, to move pursuant to Rule 37 if any document production was delinquent. She never moved to compel and indeed never even sought a conference with the Court. Discovery ended on December 30, 2011. Plaintiff filed the motion for sanctions on February 15, 2012, two months following the Court's initial prompting. Accordingly, Plaintiff's motion for sanctions is denied.

### III. SUMMARY JUDGMENT

Summary judgment shall be granted in favor of a movant where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must resolve all ambiguities and draw all inferences against the moving party. *See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005). The movant bears the burden of establishing the absence of any genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A material fact "might affect the outcome of the suit under the governing law," and an issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Holtz v.*

*Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation and citation omitted). "The party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is *a genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). Summary judgment in a discrimination case "may still be appropriate if the plaintiff relies on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." *Figueroa v. New York City Health & Hosps. Corp.*, 500 F. Supp. 2d 224, 228 (S.D.N.Y. 2007) (internal quotation marks omitted). "Indeed, the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trial—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("Trial courts should not treat discrimination differently from other ultimate questions of fact." (internal quotation marks omitted)).

A.   **Municipal Liability—The *Monell* Claim**

To hold the City or the individual defendants in their official capacities liable under § 1983, Plaintiff must show that the violation of her constitutional rights was caused by a policy, custom, or practice of the City. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989). A "persistent and widespread" practice of a municipalities' officials could also be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 (internal citations and quotation marks omitted).

Defendants argue that the named individual defendants do not have final policymaking authority regarding personnel decisions. Defs.' Supp. 2–3. They point to the New York City Charter, arguing that such authority is vested finally and exclusively in the Commissioner for the Department of Citywide Administrative Services. *Id.* (citing N.Y. City Charter §§ 3, 8(a), 21, 28, 811, 814(c)). As such, Defendants assert that only the Mayor, the City Council, and the Personnel Director—and not agency heads—have policymaking authority, regardless of whether or not other individuals have the power to make employment decisions. *Id.* (citing *Soto v. Schembri*, 960 F. Supp. 751, 759 (S.D.N.Y. 1997)). Where Plaintiff points to Defendant Doar's reorganization of the division—during which Plaintiff and at least one other black employee

4

were terminated—and argues that this constitutes the establishment of a personnel policy or custom, Pl.'s Opp'n 3–5, Defendants argue that while this is an example of a high-ranking official hiring and firing employees under his jurisdiction, it does not constitute a City policy so as to come within the confines of a *Monell* claim. Defs.' Reply 4.

Plaintiff argues that Defendants' emphasis on the locus of policymaking authority for personnel decisions centers on the wrong question. Rather than looking for policymaking authority regarding personnel matters for the municipality generally, the focus should be on HRA itself. Pl.'s Opp'n 3. It is not necessary, Plaintiff argues, to find a persistent and widespread practice of discrimination at a level higher than the particular agency in question here. *Id.* (citing *Gaffney v. Dept. of Info. Tech. & Telecomm.*, 536 F. Supp. 2d 445, 475 (S.D.N.Y. 2008)). In *Gaffney*, the City had ordered the agency to make budget cuts, and the court found that a rational juror could infer a persistent and widespread practice of discrimination by the City where the senior management of the agency executed allegedly discriminatory restructuring policies. *Gaffney*, 536 F. Supp. 2d at 474–75 ("[W]hen subordinate employees are alleged to have created a persistent and widespread practice, the subordinates' actions 'must be so manifest as to imply the constructive acquiescence of senior policy-making officials.'" (quoting *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992)).

In determining whether specific individuals or agencies hold final policymaking authority, courts must look to state law. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). "There are three means by which individuals can obtain such policymaking authority: (1) by express legislative grant; (2) through delegation of policymaking authority by those to whom the power has been expressly granted; or (3) by 'widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Philippeaux v. N. Cent. Bronx Hosp.*, 871 F. Supp. 640, 653 (S.D.N.Y. 1994) (quoting *Praprotnik*, 485 U.S. at 126), *aff'd*, 104 F.3d 353 (2d Cir. 1996), *cert. denied*, 520 U.S. 1105 (1997).

With respect to means 1 and 2, Defendants are correct to note that under New York law, policymaking authority for general personnel matters has not been vested in HRA or the named individual defendants. *See* N.Y. City Charter ch. 35 (vesting such authority in the Commissioner for the Department of Citywide Administrative Services). And the power to make employment decisions alone does not qualify as policymaking authority, rather it is the power to act pursuant

to other City policies. *See, e.g.*, *Chin v. New York City Hous. Auth.*, 575 F. Supp. 2d 554, 562 (S.D.N.Y. 2008) ("The critical characteristic of final policymakers when employment is at issue is whether the municipal official has authority to formulate the rules governing personnel decisions rather than authority to make decisions pursuant to those rules—e.g., the hiring and firing of subordinates."). However, courts in this district have fallen on either side of the line between agency heads and the Personnel Director in interpreting where policymaking authority lies in the New York City Charter for the purposes of employment discrimination and retaliation actions.[3]

Plaintiff failed to provide sufficient evidence to allow a reasonable juror to conclude that the alleged discriminatory practices were so widespread as to constitute a custom or policy of the City. Unlike in *Gaffney*, where there was a formal restructuring that resulted in the firing of many employees and the subsequent rehiring later of employees outside the protected classes, the evidence here of a municipal policy consists of testimony of a perceived trend of a greater proportion of white men in Doar's administration as compared to former-Commissioner Eggleston's. Pl.'s Opp'n 4. Plaintiff also recounts the alleged incidents of discrimination that comprise her race discrimination claim, incidents that affected a limited number of individuals close to Doar. A reasonable juror could not conclude that Doar's reorganization of management in HRA exhibited discrimination at a level so manifest as to constitute a municipal policy and to impute these actions to the City. Summary judgment is granted to the City as to this claim.

**B.      Personal Involvement of Defendant DePippo**

To hold a municipal employee liable under § 1983, Plaintiff must show that the employee was personally involved in, or caused the violation of, the Plaintiff's rights. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000).

---

[3] *Compare Aggarwal v. N.Y. City Health & Hosps. Corp.*, No. 98 Civ. 5063(DLC), 2000 WL 172787, at *8 (S.D.N.Y. Feb. 10, 2000) ("[T]he City, through Section 814 of the New York City Charter, has placed authority with the heads of agencies to establish 'measures and programs to ensure a fair and effective affirmative employment plan to provide equal employment opportunity for minority group members.'"), *Ramos v. City of N.Y.*, No. 96 CIV. 3787(DLC), 1997 WL 410493, at *4 (S.D.N.Y. July 22, 1997) (same), *and Philippeaux*, 871 F. Supp. at 653 (same), *with Soto*, 960 F. Supp. at 759 ("Since an agency head does not have final policymaking authority for personnel policy, I find that plaintiffs have failed to establish liability under *Monell*."), *Hueston v. City of N.Y.*, No. 00 Civ. 9512(RCC), 2005 WL 53256 (S.D.N.Y. Jan. 10, 2005) (same), *and Collins v. Stasiuk*, 56 F. Supp. 2d 344, 345–46 (S.D.N.Y. 1999) (same).

"Because personal involvement is a question of fact, [the Court is] governed by the general rule that summary judgment may be granted only if no issues of material fact exist and the defendant is entitled to judgment as a matter of law." *Farrell v. Burke*, 449 F.3d 470, 483–84 (2d Cir. 1994) (internal quotation marks omitted). The fact that a defendant "was in a high position of authority is an insufficient basis for the imposition of personal liability." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) (noting need for additional evidence, such as participation in relevant hearings, knowledge of wrongdoing, or direct responsibility or control), *cert. denied*, 434 U.S. 1087 (1978). Direct participation as a basis of liability "requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005) (internal quotation marks omitted).

Defendants argue that "there is no evidence in the record that [DePippo] was directly involved in or in any way facilitated the incidents which plaintiff contends were discriminatory or retaliatory", Defs.' Supp. 3, and that the decision to reassign Plaintiff from the ACCO position "was the Commissioner's and not Mr. DePippo's." Defs.' Reply 5. Plaintiff asserts that, beyond just occupying a high level position and having a close relationship with Doar, DePippo participated in the meetings where the Plaintiff's employment was discussed, advised Plaintiff of her demotion and pay reduction, and ultimately assumed supervision of the division formerly under Plaintiff. Pl.'s Opp'n 5–7; *see also* Pl. 56.1 ¶¶ 2(qq), 108 (noting that DePippo admits he "may have been part of the conversation" to demote Plaintiff and that, in the course of informing Plaintiff of her demotion, pay cut, and reassignment, DePippo stated to Plaintiff: "at least you are not going to be cleaning washrooms").

Plaintiff has proffered sufficient evidence to show that an issue of material fact exists as to DePippo's personal involvement in the alleged discriminatory actions, and summary judgment must be denied as to claims against DePippo.

C.   **Race Discrimination under Section 1981**

A motion for summary judgment for a § 1981 claim is analyzed under the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gertskis v. NYC D.O.H.M.H.*, 375 F. App'x 138, 138–39 (2d Cir. 2010). Under the *McDonnell Douglas* analysis, the plaintiff must first establish a *prima facie* case of discrimination based on her race by demonstrating that (1) she is a member of a protected class; (2) she was qualified for her

7

position; (3) she suffered an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of discriminatory intent. 411 U.S. at 802. The demonstration of a *prima facie* case "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997). However, there is a presumption of discrimination "only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id*. (emphasis removed). After the plaintiff has satisfied this "minimal" initial burden, *see, e.g.*, *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004), the burden of going forward shifts to the defendant to provide a legitimate non-discriminatory reason for the adverse employment action. *Id*. This showing must be supported by admissible evidence that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. The plaintiff then has an opportunity to demonstrate that the defendant's reasons were merely a pretext for discrimination. *See id*.

Throughout this analysis, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Thus, even where plaintiff's evidence is sufficient to raise a question as to one part of the burden-shifting inquiry, the ultimate question is whether there is sufficient evidence for a jury to find that she was discriminated against because of her race. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 93–94 (2d Cir. 2001). Where a plaintiff has not met that burden, summary judgment is appropriate. Moreover, if a plaintiff fails to show the existence of a genuine issue of material fact with respect to the *prima facie* claim, summary judgment is appropriate on that basis alone. *See Carr v. WestLB Admin., Inc.*, 171 F. Supp. 2d 302, 306 (S.D.N.Y. 2001).

     i.    *Prima Facie Case and Legitimate Nondiscriminatory Purposes*

Plaintiff has clearly established the first three elements of the *prima facie* claim: she is a member of a protected class because she is black; she was qualified, based on her education, past performance, and experience, for her positions as ACCO and Executive Deputy Commissioner; and she suffered adverse employment actions, including her reassignments, demotion, and pay cut. With respect to the fourth element, Plaintiff argues that the following facts support an inference of discrimination: the events leading up to her removal as ACCO, her demotion, and the assignment of her responsibilities to whites; false, conflicting, and implausible reasons given

to her for these actions; the more favorable treatment of white employees similarly situated, including differences in pay; degrading comments made to Plaintiff by white colleagues; and invidious comments regarding Plaintiff and other black females in general. Pl.'s Opp'n 9–10. Defendants respond that the evidence Plaintiff offers is nothing more than speculation, and that the actions taken against Plaintiff occurred under circumstances that do not give rise to an inference of discrimination. Defs.' Supp. 5. But at the *prima facie* stage, "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination . . . ." *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001). Here, Plaintiff's responsibilities as ACCO were replaced by individuals outside the protected class. *See, e.g.*, Pl. 56.1 ¶¶ 2(m), (r).

Defendants offer explanations for all of the adverse actions taken against Plaintiff. Upon Doar's appointment as Commissioner, Doar undertook many actions that he felt necessary to reorganize and improve HRA. Among these actions are those complained of by Plaintiff. Defendants point to testimony describing a deliberative process, involving the input of many individuals, and decisions that were ultimately thought to be in the best interests of HRA and the City. Defs.' Supp. 8–13.

    *ii.*   *Pretext*

A plaintiff alleging employment discrimination may show pretext where "the employer's given legitimate reason is unworthy of credence," *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1113 (2d Cir. 1988), "by reliance on the evidence comprising the prima facie case, without more," *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994), or "by demonstrating that similarly situated employees outside of the protected class were treated differently." *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 249 (S.D.N.Y. 2001). The concern is not the truth of the negative imputations against the plaintiff but rather "what *motivated* the employer." *McPherson v. N.Y. City Dept. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (internal quotation marks omitted). To that end, the plaintiff ultimately "must establish *both* that [the defendants' stated] reason was false, *and* that discrimination was the real reason." *Fisher v. Vassar College*, 70 F.3d 1420, 1433 (2d Cir. 1995) (internal quotation marks omitted).

Plaintiff's allegations of discrimination encompass multiple actions taken by Defendants that occurred over the course of many years. Though I have organized the issues below principally in terms of the adverse employment actions taken against Plaintiff, it is the

9

"cumulative weight of circumstantial evidence" that Plaintiff relies on. Pl.'s Opp'n 11 (citing and quoting *Carlton v. Mystic Transp., Inc*., 202 F.3d 129, 135 (2d Cir. 2000)). "Summary judgment is appropriate at this point only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact." *Carlton*, 202 F.3d at 135. And where an employer's intent is at issue, courts should exercise caution in deciding to grant summary judgment. *Gladwin v. Pozzi*, 403 F. App'x 603, 604 (2d Cir. 2010) (stating that evidence "must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination" (internal quotation marks omitted)). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir. 2000).

      a. Oversight over the Office of Purchasing and Materials Management

OPMM had been under Plaintiff's supervision for five years when, in 2007, Doar placed it under DePippo's supervision. Defendants note that OPMM was originally under the jurisdiction of the First Deputy Commissioner and that this change merely restored the status quo. Furthermore, Defendants assert that Plaintiff was involved in the decisionmaking process that ultimately led to this change, and that the reorganization was intended to allow the ACCO to "devote her energy to continuous improvement in the very complex contracting process". Defs. 56.1 ¶ 65 (quoting intraoffice memorandum from Doar). And contemporaneous with this reorganization, Doar appointed a black woman to head the OPMM division. Plaintiff argues that Defendants' stated reasons are false. Defendants removed OPMM from Plaintiff's oversight in the face of counter-advice. There had been no complaints that OPMM or the ACCO's office was ineffective. OPMM was assigned to DePippo, a white man (who both lacked relevant experience and received a promotion and pay increase). And Defendants ultimately placed OPMM under the newly appointed second ACCO, also a white man. Pl.'s Opp'n 14–16.

      b. Oversight by General Counsel Rather than Commissioner

In early 2009, Doar directed Plaintiff to begin reporting to HRA's General Counsel, Roy Esnard, whereas previously the ACCO reported directly to the Commissioner. Defendants argue that this is not an adverse employment action under the law. Defs.' Supp. 7–8. Furthermore, there can be no inference of discrimination where her responsibilities changed from reporting to a white male to reporting to a different white male, and where similar modifications to the organizational structure affected a diverse range of individuals. This is especially true where the

second ACCO, a white male, was also reporting to the General Counsel, raising no issue of differential treatment. Plaintiff in turn presents a very different account of the change in reporting structure. Pl.'s Opp'n 16–17. Plaintiff attempts to undermine Defendants' contention that the second ACCO was treated similarly, and she points to testimony that she says suggests that this reorganization decision was unsound to begin with and subjected her to untoward supervision.

Defendants cite cases for the proposition that this reorganization is not an adverse employment action. These cases provide little guidance here.[4] Plaintiffs, on the other hand, urge the Court to focus on whether the actions taken against Plaintiff are, in the aggregate, adverse and suggest discriminatory animus. Pl.'s Opp'n 16–17 (quoting *Timothy v. Our Lady of Mercy Med. Ctr.*, No. 03 Civ. 3556(RCC), 2004 WL 503760, at *6 (S.D.N.Y. Mar. 12, 2004). When viewed in the aggregate, the change in reporting structure is part of an overall adverse action taken against Plaintiff. The steps taken along the way to Plaintiff's ultimate demotion and pay cut—unequivocal adverse actions—include her marginalization from senior management. However, the evidence Plaintiff provides to demonstrate that this change was pretextual is exceedingly thin.[5]

---

[4] In *Morrison v. Potter*, the court rested its holding on the failure of the plaintiff to present any evidence beyond the loss of an office. 363 F. Supp. 2d 586, 591 (S.D.N.Y. 2005) ("Because Morrison has failed to establish that she suffered any adverse employment action, she has not made out a prima facie case of either discrimination . . . or of retaliation."). In *Harrison v. New York City Off-Track Betting Corp.*, the plaintiff was dissatisfied with being overlooked for a promotion. No. 99 Civ. 6075(VM), 2001 WL 1154691, at *2 (S.D.N.Y. Sept. 28, 2001). In *Alers v. New York City Human Res. Admin.*, the plaintiff was "merely assigned to assist callers with telephones rather than computers." No. 06-CV-6131 (SLT)(LB), 2008 WL 4415246, at *7 (E.D.N.Y. Sept. 24, 2008).

[5] For example, Plaintiff cites deposition testimony for the following assertion: "Defendant Doar deliberately excluded and 'froze out' Plaintiff from senior staff meetings. Instead, James George, Plaintiff's former deputy, who was then acting as the second ACCO, was invited to HRA senior staff meetings." Pl.'s Opp'n 16 (citing Pl. 56.1 ¶ 2(x), (y)). The testimony that apparently supports this assertion merely states the following:

Q: When Sandra Glaves-Morgan reported directly to you, did she continue to attend senior staff meetings?

A: I believe so.

Q: Did Jim George also attend senior staff meetings at the time he was reporting to you?

A: I believe so.

Q: Did there come a time when Sandra Glaves-Morgan stopped attending senior staff meetings?

A: I believe so.

Esnard Dep. 202:21–203:8, Dec. 1, 2011. Somewhat more persuasively, Plaintiff notes that after the roughly four month period where Plaintiff reported to Esnard—when Doar removed her as ACCO and placed her in the newly

11

### c. Removal as Agency Chief Contracting Officer

In early 2008, Doar created a second ACCO position and Plaintiff's former subordinate, James George, a white male, was appointed to assume that position. Pl. 56.1 ¶ 2(r). Plaintiff describes how over time, the second ACCO's responsibilities grew, eroding her own role, and when in July 2009 Doar ultimately decided to replace Plaintiff with George, Doar described George as "the man for the job." Pl. 56.1 ¶ 2(ff). Defendants point to evidence as far back as 2007 to suggest that there were longstanding concerns with Plaintiff's ability to work effectively with the Mayor's Office of Contract Services ("MOCS"). Defs.' Supp. 8–13. Plaintiff argues that Defendants rely on testimony made for the purposes of litigation and that there is no documentary support to suggest dissatisfaction with Plaintiff's performance as ACCO. Plaintiff goes on to argue that there is just as much, if not more, testimony suggesting Plaintiff was a competent and effective ACCO. Pl.'s Supp. 17–18; *see also* Pl. 56.1 ¶ 2(i), (j). Much of the testimony offered by both sides seems unsupported by either documentary evidence or first-hand knowledge.[6]

### d. Demotion and Pay Cut

Upon Plaintiff's removal as ACCO, Doar created for her a new position titled "Executive Deputy Commissioner, Office of Interagency Relations," Pl. 56.1 ¶ 2(ff), a change that brought with it many deleterious consequences. *Id.* ¶ 2(kk). Roughly a year later, Plaintiff was demoted several levels and pay grades, in part, because Defendants felt she had no supervisory responsibilities (in the role created specifically for her). *Id.* ¶ 2(oo). Plaintiff states that DePippo stressed that her reassignment to a lower position was temporary and that "if another opportunity presented itself she should take that opportunity." *Id.* ¶ 2(tt). Doar testifies that he created the new position for her because he "wanted to give [Plaintiff] an opportunity to find another opportunity in city government or elsewhere, and [he] wanted to help her with that transition out

---

created position of Executive Deputy Commissioner, Office of Interagency Relations—Doar joked "I guess I might even put you back on senior staff". Glaves-Morgan Dep. 187:9–10, Nov. 10, 2011.

[6] The parties do provide some evidence involving the review of a cleaning services contract with a subcontractor, Cristi Cleaning Service Corporation. *See, e.g.*, Defs. 56.1 ¶ 45; Pl. 56.1 ¶ 42–45. The resolution of the questions raised by this contested factual issue—what Plaintiff's responsibility was, what was said and to whom, and when and under what circumstances action was finally taken in response to Cristi's violations—is a matter better suited for a factfinder.

of the ACCO's office." Doar Dep. 459: 2–6, Nov. 7, 2011. Doar, according to Defendants, could have terminated her but decided instead created a "soft landing" for Plaintiff. Defs.' Supp. 13–14. The demotion and pay cut should be understood in the context of Doar trying to find an alternative to outright dismissal. *Id.* at 14–15. Plaintiff points to Doar's testimony, arguing that Doar and DePippo never provided a reason to Plaintiff for her removal and demotion. Pl. 56.1 ¶ 2(gg), (hh); *see also* Doar Dep. 388:4–13, 394:13–398:13, 399:4–400:14 (admitting that the reasons for her removal were never reduced to writing in any form).

   e. An Inference of Discrimination

  Plaintiff points to several facts that she argues a reasonable juror could rely on when inferring discriminatory intent on the part of Defendants. Plaintiff was replaced as ACCO by white persons. Pl. 56.1 ¶ 2(aa), (ee). When Plaintiff asked why she was removed and demoted, Doar stated "Because I can". *Id.* ¶ 2(o). Senior management, comprised of approximately 20 people, had three black persons under the former Commissioner. Two were removed under Doar and replaced by white persons. *Id.* ¶ 27. Plaintiff was told that she's "not gonna be anybody in this agency." *Id.* ¶ 2(s). And upon her demotion and pay cut, she was told by DePippo "at least you will not be cleaning washrooms", *Id.* ¶ 2(qq), and by Doar "I've looked at your pension and I realize that you won't be hurt too badly", Glaves-Morgan Dep. 176:2–4, Nov. 10, 2011. Plaintiff points to discrepancies in the level of education among black and white senior and management staff, and attempts to show that more qualified black employees are overlooked. Included in this group of evidence is her pay cut, where she puts forth facts suggesting that similarly situated white managers who had a comparable level of responsibility, did not receive pay cuts. Pl. 56.1 ¶ 2(oo).

  As to the comments made by Doar and DePippo that Plaintiff relies on to provide a "background of immediate and long-lasting animus" aimed at Plaintiff, Pl.'s Opp'n 13, Defendants argue that these comments are stray remarks and raise no inferences of discrimination. Defs.' Reply 5–9. While these comments do not unequivocally evidence *race* discrimination, looked at in the context of a white boss to a black subordinate, a reasonable juror could infer discrimination. *See Crump v. NBTY, Inc.*, No. 10-CV-632 (WFK)(ETB), 2012 WL 692174, *5–6 (E.D.N.Y. Mar. 1, 2012) (assuming for the purposes of a summary judgment motion the reference of a superior to "your kind" was discriminatory). And DePippo, at least, acknowledges that his comment about "cleaning washrooms" is potentially discriminatory. Pl.

13

56.1 ¶ 2(rr). Furthermore, these comments were made by her superiors in the context of employment decisions that adversely impacted her.

In sum, it is possible Defendants could prevail on a motion for summary judgment as to some of these issues. It is doubtful, for instance, that the change in Plaintiff's oversight from the Commissioner to the General Counsel either constitutes an adverse employment action or occurred under circumstances that raise an inference of discrimination. Furthermore, because the lawsuit concerns individuals at the highest levels of public service, their numbers are few. This makes it difficult to read any discriminatory intent into minor variations between pay or allocations of responsibility. With such small sample sizes and with decisions that are specific to each individual, it is hard to find either that individuals are similarly situated or that there are any patterns to Doar's decisions. But there remain a number of contested factual issues, such as whether Doar was actually dissatisfied with Plaintiff's performance, that are best suited for a jury. And the circumstances in which the adverse employment actions taken against Plaintiff occurred—such as DePippo's comment that he acknowledged could be discriminatory, comments by Doar that, with more context, might suggest bias, the immediate scrutiny of Plaintiff's performance upon Doar's appointment when Plaintiff had been performing her job satisfactorily under Eggleston, and the gradual shift towards a more white and male senior staff—provide sufficient grounds for a reasonable juror to infer discriminatory intent. *Cf. Golia v. Leslie Fay Co., Inc.*, 01 CIV. 1111 (GEL), 2003 WL 21878788, at *5 (S.D.N.Y. Aug. 7, 2003). Summary judgment must therefore be denied.

**D.      Retaliation under Sections 1981**

Retaliation claims under § 1981 also fall under the *McDonnell Douglas* standard. *See, e.g.*, *Carmody v. Vill. of Rockville Ctr.*, 661 F. Supp. 2d 299, 324 (E.D.N.Y. 2009) (collecting Second Circuit cases). To make out a *prima facie* case of retaliation, plaintiff must show: "[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995); *accord Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006). "The term 'protected activity' refers to action taken to protect or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). The plaintiff can establish a *prima facie* case by showing a mere temporal proximity between the protected

conduct and the alleged retaliatory action. *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932–33 (2d Cir. 2010).

Plaintiff has established the first two elements. Plaintiff attests that she complained to Doar that a colleague's termination "was not warranted, and was because she was a black female in a top executive position in the agency." Maduegbuna Decl. Ex. 14 ¶ 18. Plaintiff further attests that when Doar first came to HRA, she "set out to tell him about the outstanding black staff members who did great work but were underpaid." *Id.* ¶ 11. She states that she told Doar about white staff who were less qualified but were treated more favorably than black staff and attained higher management positions. *Id.* ¶ 12. Her declaration, while it doesn't provide the verbatim content of the conversations, is sufficient to show that she complained to Doar about what she saw as discriminatory treatment of blacks.[7] *See Cruz*, 202 F.3d at 566 ("[O]pposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection . . . ."); *see also Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (including in the definition of "opposition" such activities as "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges"). She has shown that adverse actions were taken against her, including her removal as ACCO and her ultimate demotion and pay cut. *See Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

To establish the final element, Plaintiff must show that the adverse action taken against her is causally connected to her complaint. "A causal connection may be shown directly, through evidence of retaliatory animus directed against the plaintiff by the defendant, or indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Lessambo v. PricewaterhouseCoopers, L.P.*, 08CIV6272, 2010 WL 3958787, at *13 (S.D.N.Y. Sept. 27, 2010) (internal citation omitted), *aff'd*, 451 F. App'x 57 (2d Cir. 2011).

Plaintiff has failed to establish the causation element of her *prima facie* case. Plaintiff's initially complained of disparate treatment when Doar first arrived, which was in February 2007,

---

[7] Plaintiff states that she did speak with HRA's Equal Employment Opportunity Officer, but this was after the alleged adverse actions were taken against Plaintiff. Defs.' Supp. 17.

and she complained in December 2007 when a black colleague was fired. Plaintiff was removed as ACCO in July 2009 and demoted in December 2010. A reasonable juror could not find that these adverse actions taken against Plaintiff were causally connected to her complaints which were made approximately two years earlier. *See Milano v. Astrue*, 05CIV.6527(KMW)(DCF), 2008 WL 4410131 (S.D.N.Y. Sept. 26, 2008), *aff'd*, 382 F. App'x 4 (2d Cir. 2010) ("The 13 months separating that protected activity in July 2005 from Plaintiff's reassignment in August 2006 is too long a period to allow Plaintiff to benefit from the inference of discriminatory intent afforded in cases of temporal proximity." (internal quotation marks omitted)); *Garrett v. Garden City Hotel, Inc.*, No. 05 Civ. 0962, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) ("[D]istrict courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation.").

Plaintiff does argue, however, that the adverse action taken against her is best understood as a series of events that culminate with her demotion several years later, including the hostile environment in which she worked. This still leaves seven months between her initial complaints and the removal of OPMM from her oversight—the first in the series of events that together could constitute an adverse action. Even with the potentially discriminatory comments that Plaintiff relies on in establishing her race discrimination claim, a reasonable juror could not conclude that Doar's decisions during his reorganization of HRA were in retaliation for her earlier complaints. *See Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005) ("This Court has not established a specific delay between protected activity and adverse employment action that defeats an inference of causation. We have in the past held that a delay of three months was fatal to a showing of causation, and that a delay of eight months supported a showing of causation."). *Cf. Fowler v. N.Y. Transit Auth.*, 96 CIV. 6796 (JGK), 2001 WL 83228 (S.D.N.Y. Jan. 31, 2001) ("[T]he series of actions that the plaintiff complained of as being retaliatory . . . occurred the day after she complained of discrimination[,] and . . . other incidents occurred in sufficiently close proximity to protected activity to raise a strong inference of retaliation"). Plaintiff's retaliation claim thus fails as a matter of law because the "causal nexus" between her complaint to Doar and the adverse actions taken against her is "too attenuated." *Burkybile*, 411 F.3d at 313. Summary judgment is granted as to this claim, and the claim is dismissed.

### E. Qualified Immunity

"Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982)). "[A] government actor enjoys qualified immunity if, at the time of the challenged action, it was objectively reasonable for him to believe that his behavior did not violate the [plaintiff's] clearly established constitutional rights." *Id.* at 418. Defendants argue that they are entitled to qualified immunity because they did not violate Plaintiff's rights under the Constitution and, in any event, Plaintiff did not have a clearly established right to her employment, as she was at-will. Defs.' Supp. 19–20. As stated above, a reasonable juror could find that Defendants' justifications were pretextual and that discrimination was a motivating reason for the adverse employment actions taken against Plaintiff. There is little doubt that Defendants were on notice that individuals have a right to be free from race discrimination. *See, e.g.*, *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 129–30 (2d Cir. 2004). And "it can never be objectively reasonable for a governmental official to act with the intent that is prohibited by law." *Id.* at 130 (internal quotation marks omitted). Summary judgment on this basis is denied.

### F. Statute of Limitations for Section 1983 Claims

A claim under federal law "accrues once the plaintiff knows or has reason to know of the injury which is the basis of his action." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (internal quotation marks omitted). And the statute of limitations under § 1983 is three years. *Id.* Defendants argue that the following actions are time-barred because the occurred over three years before Plaintiff filed her complaint: (1) the removal of OPMM from Plaintiff's oversight; (2) Doar's comment to Plaintiff that her office was "woman-heavy"; and (3) Doar's comment to Plaintiff that he was making changes "because [he] can". Defs.' Supp. 20–21. Plaintiff argues that these events are not asserted as independent claims, and they provide the necessary background and are part of the same unlawful practice that includes recent acts. Pl.'s Opp'n 24. Defendants respond that the theory of a continuing violation is unavailable where Plaintiff has alleged discrete acts of discrimination. Defs.' Reply 3–4 (citing *Nat'l R.R. Passenger Corp. ("AMTRAK") v. Morgan*, 536 U.S. 101, 113 (2002)).

It is not clear how the actions Defendants seek to time bar can stand alone as discrete discriminatory acts. "A claim does not accrue, of course, until the challenged conduct causes the claimant injury." *Veal*, 23 F.3d at 725. Unlike Plaintiff's change in reporting from Doar to the General Counsel, the parties have not argued the issue of whether OPMM's removal from Plaintiff's oversight constitutes an adverse employment action. But for similar reasons as the change under the General Counsel, it is unlikely that the removal of OPMM from Plaintiff's oversight could serve as a basis, standing alone, for a discrimination claim. *See Anderson v. Nassau County Dept. of Corr.*, 558 F. Supp. 2d 283, 299 (E.D.N.Y. 2008) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."). Rather, these events are relied on by Plaintiff to infer discriminatory intent on the part of Defendants.[8] Summary judgment on this basis is denied.

## G.     State Law Claims

Defendants argue that because Plaintiff has not pled or proven that a notice of claim was filed for her New York Civil Service Law claims, these claims must be dismissed. Defs.' Supp. 21 (citing N.Y. Gen. Mun. Law §§ 50-i, 50-e; *Parochial Bus Sys. v. Bd. of Educ.*, 60 N.Y.2d 539, 548 (1983)). Plaintiff did not respond in her brief, and she conceded the point at oral argument. Tr. 46:6–20, Mar. 6, 2012. Despite Plaintiff's failure to present any evidence or argument for why summary judgment should not be granted, I am unable to determine that Defendants are entitled to judgment as a matter of law.

Generally speaking, § 50-i requires notice for tort claims "for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act" of the City. N.Y. Gen. Mun. Law § 50-i (McKinney). However, under New York law, the notice of claim requirement does not apply "where the primary relief being sought is equitable in nature, and monetary damages are only incidental." *People United for Children, Inc. v. City of N.Y.*, 108 F. Supp. 2d 275, 301 (S.D.N.Y. 2000). "In determining whether plaintiffs primarily seek equitable or monetary relief, the Court must consider the complaint in the light of all its allegations and its full scope and purport." *Id.* (internal quotation marks omitted). Here, Plaintiff seeks both equitable relief, including her reinstatement as ACCO,

---

[8] Defendants argue that these *discrimination* claims are barred; Plaintiff, confusingly, says these actions are part of Plaintiff's *hostile work environment* claims. Pl.'s Opp'n 24.

and damages. *See* Compl., Prayer for Relief. Defendants have not met their burden because they have not demonstrated that the notice of claim was required in this instance. Summary judgment is denied as to these claims.

## IV.  CONCLUSION

The Court has considered Defendants' additional arguments and finds them without merit. The motion for sanctions is DENIED. The motion for summary judgment is GRANTED as to claims against the City and the individual defendants in their official capacity and as to the § 1981 claim for retaliation. The motion for summary judgment is DENIED as to all other claims, including the § 1981 claim for discrimination against the individual defendants in their personal capacity. The Clerk of the Court is instructed to close the motions.

**SO ORDERED.**

March 21, 2012
New York, New York

HAROLD BAER, JR.
**United States District Judge**

19